UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No. 19-41974-BDL |
| TRAVIS B. BRANDT | |
| Debtor. | Chapter 7 |

| | |
|---|---|
| JACOBUS DU PREEZ, an individual, | |
| Plaintiff, | Adversary Proceeding No. |
| -against- | |
| TRAVIS B. BRANDT, | |
| Defendant | |

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO § 523 AND §727 OF THE BANKRUPTCY CODE**

Plaintiff-Creditor Jacobus DuPreez as and for his Complaint against Defendant Travis B. Brandt (the "Debtor"), respectfully alleges:

**JURISDICTION**

1. On June 4, 2019, the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Washington.

2. On July 23, 2019, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting").

3. As of the date of this Complaint, the Debtor has not been granted a discharge.

4. This Complaint is timely because the date by which a Complaint objecting to the Debtor's discharge or to determine dischargeability of a debt expires on September 23, 2019.

1

5. This is an adversary proceeding in which the plaintiff-creditor is objection to the Debtor's discharge under Bankruptcy Code § § 727(a)(3) and 727 (a)(4)(A) and is seeking a determination as to the dischargeability of the debt owed by Debtor to Plaintiff under Bankruptcy Code § § 523(a)(2)(A); 523(a)(4), and 523(a)(6).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § § 523 and 727.

7. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

## PARTIES

8. Plaintiff is an individual residing in Snoqualmie, King County, Washington.

9. Plaintiff is a judgment creditor of the Debtor.

10. Defendant is the Debtor in the above-captioned case and at all times has resided at Tacoma, Pierce County, Washington.

11. Debtor owned a business, Xtaero, Inc. ("Xtaero"), which was engaged in the business of manufacturing, building, marketing, and selling aluminum boats.

## FACTUAL BACKGROUND/ALLEGATIONS

12. In November 10, 2004, Debtor opened American Aluminum Boats, Inc. ("AAB"), a company engaged in the business of manufacturing, building, marketing, and selling aluminum boats. For reasons similar to Plaintiff's lawsuit, Debtor and AAB were sued.

13. AAB filed for bankruptcy protection in 2006, cause number 2:2006-bk-13457. Debtor filed for bankruptcy protection in 2006, cause number 2:2006-bk-13346.

14. In 2012, Debtor opened Xtaero while living in California. Despite his residence in California, Debtor incorporated the business in Washington.

15. In 2015, Xtaero produced and sold its first boat. It sold three more boats between 2015 and 2016.

16. Plaintiff and Debtor met sometime during the early summer of 2014. They became friends and between June and October of 2016, Plaintiff assisted Debtor with his business by designing and producing small boat parts for Xtaero. Plaintiff did this as a friend and without any expectation of payment.

17. In December of 2016, Debtor solicited a loan from Plaintiff; Plaintiff would loan Xtaero $20,000 to help Debtor finance the completion of Xtaero's fifth boat (Hull H5), which was in the process of manufacturing. In exchange, Debtor promised Plaintiff a 15% cash return on the loan.

18. Plaintiff agreed to the loan and transferred the funds to Xtaero.

19. Several times shortly thereafter, Debtor requested that Plaintiff loan him additional funds. Plaintiff declined.

20. In April of 2017, Xtaero repaid Plaintiff the principal of the loan plus $3,000 of profit per their agreement and upon the sale of the boat, which Plaintiff had helped to finance.

21. On or about April 24, 2017, Xtaero sold another boat for cash (Hull H6), construction of which was not complete. Debtor also started canvassing for financing to build another boat, hull number XTI24DV7F717 ("Hull H7"). Debtor made a rough proposal to Plaintiff whereby Plaintiff would loan Xtaero approximately $100,000 to be paid in three installments as Hull H7 was completed, and promised the same 15% profit from the previous transaction.

22. On May 3, 2017, Defendants communicated with Plaintiff and pushed Plaintiff to write Xtaero a check that day. Plaintiff declined, stating that he would need to look over the numbers, and that Debtor would need to draw up a timeline for construction prior to the loan.

23.     On May 4, 2017, Plaintiff informed Debtor that the proposed numbers and timeline did not make sense. Plaintiff also informed Debtor that in the event that he loaned the money, Xtaero and Debtor would have to agree that the money would be used solely for the construction of Hull H7 and that Plaintiff would have a first position lien on any and all collateral secured by the loan, including Hull H7.

24.     On May 17, 2017, Debtor sent Plaintiff a proposed construction schedule with milestones and the amounts of cash needed for each milestone. After several reiterations of the construction schedule and milestones and assurances from Debtor that the money loaned would only be used for the construction of Hull H7, Plaintiff and Debtor reached an agreement for the terms of the loan. According to Debtor's proposal, the total loan would need to be for $121,500 and would be paid in three draws: $30,000, $37,500, and $54,000 respectively.

25.     Debtor again reiterated to Plaintiff that all money loaned, with the exception of approximately $7,500, would be used for the construction of Hull H7 only and not for any other purpose—specifically it would not be used to pay old debt.

26.     On May 24, 2017, Plaintiff sent Debtor a promissory note outlining the terms of the loan. Contained in the promissory note was language whereby Debtor personally guaranteed repayment. Debtor signed the promissory note. Plaintiff retained a lien on Hull H7 until the time the loan was repaid.

27.     Plaintiff wired the initial $30,000 draw to Xtaero. Shortly thereafter, Debtor contacted Plaintiff to inform him that they had ordered the metal for Hull H7.

28.     On June 6, 2017, Debtor communicated to Plaintiff that the metal for Hull H7 had arrived and construction had commenced on Hull H7 that day.

29. On June 7, 2017, Debtor contacted Plaintiff and informed Plaintiff that he needed the second draw. Plaintiff and Debtor discussed that Hull H7 was already behind in construction and Plaintiff informed Debtor that he did not feel comfortable advancing the next draw until construction was on schedule.

30. By June 23, 2017, Debtor was pressuring Plaintiff to make the second draw payment. On that day, under duress, Plaintiff gave Debtor $5,000 cash and made arrangements to have an additional $35,000 wired to them subsequently as draw number two. Plaintiff again expressed his displeasure with the lack of progress on Hull H7.

31. On information and belief, on or about July 9, 2017, construction of Hull H6 was completed. Construction of Hull H7 was severely behind schedule.

32. On or about July 27, 2017, Debtor requested that Plaintiff issue the final draw. Plaintiff again declined the payment because Hull H7 was behind schedule. Debtor told Plaintiff that he needed cash immediately or he would have to lay people off and Plaintiff's investment up to this point would be a total loss. Plaintiff felt pressured and again agreed to the advance under duress.

33. Later that day, Plaintiff met Debtor and advanced him $6,000 in cash so that Defendants could make payroll. Plaintiff reiterated his concerns and disappointment that Hull H7 was so far behind schedule. Debtor assured Plaintiff that everything would get back on course.

34. On August 2, 2017, Plaintiff advanced an additional $10,000 to Debtor in cash from his personal checking account.

35. On August 3, 2017, Plaintiff wired the remaining balance of draw number three in the amount of $35,500 to Xtaero. Plaintiff again raised his concerns that Hull H7 was severely behind schedule.

36. On August 22, 2017, Debtor informed Plaintiff that he had found a potential buyer for Hull H7. Debtor also informed Plaintiff that he had run out of money and would need cash from the sale to complete the boat and would not be able to repay Plaintiff in full.

37. Plaintiff informed Debtor that he would not release the lien he retained on the title of Hull H7 until he had been repaid.

38. Debtor represented to the potential buyer of Hull H7 that the title to Hull H7 was free and clear. This was a materially false statement as Plaintiff still retained his lien on Hull H7.

39. Sometime in September of 2017, Debtor informed Plaintiff that there was an additional lender, which retained a first position lien on Hull H7 and that Plaintiff did not have a first position subordination agreement in writing as was previously promised to Plaintiff.

40. In September of 2017, Plaintiff filed a UCC-1 form documenting his lien on Hull H7. Plaintiff also received a subordination letter from the first position lien holder with regard to Hull H7 and all future hulls and all work in progress.

41. On October 31, 2017, Plaintiff sent Xtaero and Debtor a notice of default pursuant to the promissory note and demanded that Xtaero cure the default within the 90-day cure period.

42. On information and belief, sometime thereafter Debtor notified the potential buyer that Plaintiff retained a 100% lien on Hull H7. Debtor told the potential buyer that if the potential buyer were to loan Debtor an additional $30,000, Xtaero could have Plaintiff's lien released. The potential buyer agreed to loan Debtor the money conditioned on Debtor's receipt and tender of a lien release from Plaintiff. Plaintiff never released his lien or signed a lien release. Debtor represented to the potential buyer that he had received a lien release from Plaintiff and provided the potential buyer with a "paid in full" invoice and a Manufacturer Statement of Origin—these documents and the representation made by Defendants were materially false.

43. On or about February 1, 2018, neither Xtaero nor Debtor had cured the default and Plaintiff sent a demand letter. In the demand letter, Plaintiff instructed Debtor that they were not to release possession of Hull H7 or any other collateral secured by the promissory note.

44. Debtor shipped Hull H7 to the potential buyer, who resides in Alaska and the buyer (henceforth known as the "Alaska buyer") accepted Hull H7 based on the false representation that the lien had been released.

45. To date, Plaintiff has not received any payment on the promissory note or of any interest due thereunder. On information and belief, Hull H7 is in the possession of the Alaska buyer. Defendants have refused to make any payments.

46. Plaintiff filed suit against Debtor and Xtaero on July 13, 2018. In addition to contract claims against Xtaero and Debtor, Plaintiff asserted claims for fraud against Debtor and a claim to pierce the corporate veil of Xtaero and impose alter ego liability upon the Debtor based on his use of Xtaero to commit a fraud that resulted in injury to Plaintiff.

47. On information and belief, Debtor had induced Plaintiff to loan money under false pretenses, made false representations, failed to disclose material information prior to the loan, committed fraud, converted Plaintiff's money for personal use, misappropriated funds, given other creditors preferential treatment, lied, embezzled, and done other acts and omissions willfully and maliciously to injure Plaintiff.

48. On February 8, 2019, Summary Judgment was entered against Debtor and on March 19, 2019, Judgment was entered against Debtor under King County Superior Court cause number 18-2-17434-1 SEA. No part of the judgment was ever paid.

49. The Judgment against the Debtor has not been appealed, vacated, or modified, and now is final.

50. On June 18, 2019, just days after filing this proceeding, Debtor incorporated ZALNATRAV, INC., a Washington corporation. On information and belief, Debtor is continuing his business under this new corporation.

**COUNT I – NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE**

51. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 50 of this Complaint as if set forth at length herein.

52. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

53. All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(1)(2)(A).

**COUNT II – NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE**

54. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 53 of this Complaint as if set forth at length herein.

55. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

56. All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(4).

**COUNT III – NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE**

57. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 56 of this Complaint as if set forth at length herein.

58. Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
> (6) or for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

59. All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for willful and malicious injury caused by the Debtor within the meaning of Bankruptcy Code § 523(a)(6).

**COUNT IV – OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE**

60. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 59 of this Complaint as if set forth at length herein.

61. Bankruptcy Code § § 727(a)(3) provides that:

> (a) The court shall grant the debtor a discharge, unless
> . . .
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

62. The Debtor, in his operation of his business, Xtaero, operated this businesses as his alter egos, seeking to shield himself from personal liability while at the same time using funds of these businesses for personal purposes.

63. The Debtor, in his operation of his businesses, Xtaero, concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained.

64. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(3).

### COUNT V – OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(4)(A) OF THE BANKRUPTCY CODE

65. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 64 of this Complaint as if set forth at length herein.

66. Bankruptcy Code § § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless
. . .
(4) the debtor knowingly and fraudulently, in or in connection with the case –
(A) made a false oath or account.

67. The Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, in that he represented in the Statement of Financial Affairs attached to his Petition that

68. The Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, in that he represented in the Statement of Financial Affairs attached to his Petition that

69. By virtue of the Debtor's false representations and omissions, and the oath he took concerning the veracity of his submissions, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(4)(A).

WHEREFOR, Plaintiff respectfully requests that this Court enter Judgment determining that the debt reflected in the Judgment entered in favor of Plaintiff against the Debtor on March 9, 2019, is non-dischargeable under Bankruptcy Code § § 523(a)(2)(A), 523(a)(4), and 523(a)(6) or, in the alternative, denying the Debtor's discharge under Bankruptcy Code § § 727(a)(3) and 727(a)(4)(A), and granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Mercer Island, Washington
September 20, 2019

/s/Matthew S. Marcoe
Matthew S. Marcoe, WSBA #46743
Law Offices of Matthew S. Marcoe PLLC
7900 S.E. 28th Street, Ste 500
Mercer Island, WA 98040
P: (206) 714-0874
F: (425) 529-9505
mmarcoe@marcoelaw.com

Attorney for Plaintiff